# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VICENTE CRUZ, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| **-against-** | **17 Civ. 00815 (GTS) (DJS)** |
| **SAL-MARK RESTAURANT CORP. d/b/a MARINER'S HARBOR RESTAURANT, MATTEO-BELLA, LLC d/b/a FRANK GUIDO'S LITTLE ITALY, FRANK GUIDO, SALVATORE GUIDO III, and MARK GUIDO, Jointly and Severally,** | |
| **Defendants.** | |

## SETTLEMENT AGREEMENT AND RELEASE

1

## RECITALS AND BACKGROUND

This Settlement Agreement and Release ("Agreement") is entered into by and among: (1) named plaintiff Vicente Cruz (the "Named Plaintiff"), on behalf of himself and a class of similarly situated restaurant employees (collectively, the "Plaintiffs"); and (2) Sal-Mark Restaurant Corp. d/b/a Mariner's Harbor Restaurant, Matteo-Bella, LLC d/b/a Frank Guido's Little Italy, Frank Guido, Salvatore Guido III, and Mark Guido and unnamed party Mark-Sal, LLC (collectively, the "Defendants"). The Plaintiffs and the Defendants are referenced hereinafter jointly as the "Parties."

WHEREAS, the above-captioned action was originally filed by the Named Plaintiff in the United States District Court for the Northern District of New York on or about July 24, 2017 (the "Complaint" or the "Litigation");

WHEREAS, the Parties agree that there are bona fide disputes between them in this Litigation and agree that it is desirable that the Litigation be settled upon the terms and conditions set forth below to avoid further expense and uncertain, burdensome and protracted litigation;

WHEREAS, Plaintiffs' Counsel conducted significant investigation of the facts and law before the Litigation was filed. Moreover, after the Litigation was filed, the Parties engaged in substantial discovery, including a review and analysis of hundreds of pages of time and payroll records;

WHEREAS, the Parties participated in a mediation before Michael J. Murphy, Esq. (the "Mediator"), an experienced mediator who specializes in labor and employment matters. A mediation session was held on July 24, 2018. At the mediation session, the Parties reached a settlement of the Litigation following extensive arms' length negotiations, the preliminary terms of which were documented in the "Term Sheet," and which is memorialized in this Agreement; and

WHEREAS, Defendants and Defendants' Counsel have performed a thorough study of the law and facts relating to the claims asserted in the Litigation. Based upon Defendants' analysis, taking into account the sharply contested issues, the expense and time necessary to pursue the Litigation through trial, the risks and costs of further defense of the Litigation, and the uncertainties of complex litigation, the advice of Defendants' Counsel, Defendants have concluded that a settlement with the Named Plaintiff and the Class Members on the terms set forth herein is fair, reasonable, adequate and in the best interests of Defendants.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto mutually agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**    **Acceptance Period.**  "Acceptance Period" means the one hundred and twenty (120) day period after mailing of the Settlement Check within which a Participating Class Member must cash or negotiate a Settlement Check.

**1.2**    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

**1.3**    **Claim Form.** "Claim Form" shall mean the form, as approved by the Court, that Class Members other than the Named Plaintiff must complete and return in the manner and time period set forth therein to be eligible for a distribution from the Net Settlement Fund. The Claim Form need not be completed and submitted by the Named Plaintiff, who will automatically receive a distribution of the Settlement Fund.

**1.4**    **Claim Period**. "Claim Period" means the period within which time Class Members must mail Claim Forms to Class Counsel in order to participate in the settlement of the Litigation. Each Class Member shall have sixty (60) days from the date of mailing of a Claim Form to him/her by Class Counsel to return a Claim Form in order to be eligible to receive a payment from the settlement of the litigation. To be effective, a Claim Form must be post-marked within sixty (60) days of the date of mailing.  A Class Member who requests a replacement Claim Form during the Claim Period will be afforded a one-time extension of thirty (30) days from the date of mailing of a Claim Form by Class Counsel to return his/her Claim Form.

**1.5**    **Class; Class Members.**  "Class" or "Class Members" shall be defined as: All current and former restaurant employees who worked at Mariner's Harbor and/or Frank Guido's Little Italy at any point from July 24, 2011 to the date of the Court's preliminary approval.

**1.6**    **Class List.** A list of all Class Members, identified (to the extent known by Defendants) by name, contact information, dates of employment, position(s) held, and part-time or full-time employment status, shall be furnished by Defendants to to Class Counsel, and shall only be used by Class Counsel to effectuate the settlement.

**1.7**    **Class Certification.**  "Class Certification" shall refer to the fact that the Parties have agreed to certify the Class referenced herein for purposes of settlement only and have conditioned said certification upon the completion of settlement.  In the event settlement should not be finalized, not completed, nullified, or in any way set aside, the certification of the Class shall be rendered null and void.

**1.8**    **Class Period.** "Class Period" refers to the period beginning on July 24, 2011 and continuing through the date of the Court's preliminary approval of the settlement.

**1.9**    **Counsel**.  "Plaintiffs' Counsel" or "Class Counsel" shall mean Brent E. Pelton, Esq. and Taylor B. Graham, Esq., Pelton Graham LLC, 111 Broadway, Suite 1503, New York, New York 10006. "Defendants' Counsel" shall mean Benjamin W. Hill, Esq., Dreyer Boyajian LLP, 75 Columbia Street, Albany, NY 12210.

**1.10**   **Court.**  "Court" means the United States District Court for the Northern District of New York.

3

1.11    **Days.**  "Days" means business days if the specified number is less than ten (10), and calendar days if the specified number is ten (10) or greater.

1.12    **Deadline Reminder Notice.**  "Deadline Reminder Notice" means the form, as approved by the Court, that shall be sent by Class Counsel to Class Members from whom Class Counsel has not received a Claim Form within thirty (30) days of mailing of the Claim Form by Class Counsel.

1.13    **Distribution**. "Distribution" shall refer to the mandatory payment of Class Counsel's attorneys' fees and costs, service award to the Named Plaintiff, and Individual Allocations as set forth in Paragraphs 3.3(A)(3)-(5).

1.14    **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court on the Motion for Final Approval and Dismissal of the Litigation, unless otherwise scheduled by the Court without the filing of a motion.

1.15    **Final Order.**  "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks, approval of service award to the Named Plaintiff, approval of Class Counsel's attorneys' fees and costs, and dismissing of the Litigation with prejudice.

1.16    **Final Effective Date.**  "Final Effective Date" shall be 31 days following the date the Court enters a Final Order; the time to appeal from the Final Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.17    **Individual Allocation**. "Individual Allocation" shall mean the allocation of the Settlement Amount to which each Class Member is entitled pursuant to the plan of allocation set forth below in Section 3.3(A)(3) calculated on the basis of his or her dates of employment and position.

1.18    **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the total amount to be paid to an individual Participating Class Member, not including a service award to the Named Plaintiff, consisting of a Participating Class Member's Individual Allocation.

1.19    **Litigation.**  The "Litigation" means *Cruz v. Sal-Mark Restaurant Corp., et al.,* United States District Court for the Northern District of New York, Case No. 17-CV-00815.

1.20    **Net Settlement Amount.** "Net Settlement Amount" shall mean the remainder of the Settlement Amount after deductions described in Sections 3.3, 3.4 and 3.5 for payment of court-approved service award to the Named Plaintiff and Class Counsel's attorneys' fees

and costs.  The Net Settlement Amount shall consist of the sum total of all Participating Class Members' Individual Settlement Amounts.

1.21 **Notice or Notices.**  "Notice" or "Notices" means the form Notice of Proposed Settlement, as approved by the Court, including notice of an opportunity to opt-out and/or object to the proposed settlement.

1.22 **Objector.** "Objector" means an individual who properly submits an Objection Statement to the settlement (as set forth in Paragraph 2.8) and this Agreement, but does not include any individual who timely submits an Opt-out Statement.

1.23 **Opt-Out Date.**  The date by which any Class Member who has decided to opt-out and not be included in this Agreement or participate in the Settlement must file an Opt-out Statement, which date shall be no later than thirty (30) days after the initial mailing of the Notice except as otherwise directed by the Court in the Preliminary Approval Order. Class Members whose first mailing was returned to Class Counsel as undeliverable will be allowed an additional thirty (30) day period to opt-out from the date of the second mailing and under no circumstances shall have more than sixty (60) days to file an Opt-out Statement, except as otherwise directed by the Court.

1.24 **Opt-out Statement.**  "Opt-out Statement" is a written, signed statement by a Class Member that he/she has decided to opt-out and not be included in this Agreement or in the settlement of this Litigation.  A Class Member and any Objector who does not submit a timely Opt-out Statement waives and releases all Released State Law Claims against the Released Parties.  A Class Member who submits an Opt-out Statement retains Released State Law Claims and Released Federal Law Claims, to the extent any exist.

1.25 **Participating Class Member.**  A Participating Class Member shall mean a Class Member who has not timely submitted an Opt-out Statement and who returns a Claim Form during the Claim Period in the manner and the period specified on the Claim Form eligible to participate in this settlement.

1.26 **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the settlement of the Litigation; (ii) approving the Notice to the Class; and (iii) directing the manner and timing of providing the Notice to the Class Members.

1.27 **Released Federal Law Claims.**  "Released Federal Law Claims" shall mean all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, arising under Federal law, relating to the payment of wages, minimum wages, overtime wages, and expenses including the Fair Labor Standards Act of 1938 ("FLSA"), whether known or unknown, and whether anticipated or unanticipated, by a Participating Class Member, that arose or accrued from July 24, 2014 through the date of the execution of this Agreement.  This includes (under such claims) requests for any type of relief, including without limitation claims for damages, unpaid wages, premium pay, unpaid overtime, tips, gratuities, adjustments to compensation, unreimbursed expenses, waiting-time penalties, or other penalties for

5

overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise; and which were or which could have been asserted in this Litigation against any Releasees.

1.28 **Released State Law Claims**. "Released State Law Claims" means any and all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, whether known or unknown, and whether anticipated or unanticipated, by all Participating Class Members who do not opt-out, that arose or accrued from July 24, 2011 through the date of the execution of this Agreement relating to the payment of wages, minimum wages, premium pay, unpaid overtime, unpaid spread-of-hours payments, adjustments to compensation, wage notice violations, wage statement violations, alleged deductions from compensation, unreimbursed expenses, waiting-time penalties, or other penalties for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise.  This release includes any and all claims which were or which could have been asserted in the Litigation that arose under the laws of New York, including for any wage and hour violations including failure to pay minimum wages, overtime premiums, spread-of-hours premiums, and gratuities to any Participating Class Member, any failure to pay timely wages, including payment of wages at termination, any alleged deduction from wages and/or allegedly illegal payments by separate transaction, any failure to provide or pay for meal breaks, and/or rest periods, all claims for penalties or additional damages, including without limitation waiting time penalties.  The Released State Law Claims include but are not limited to any claims arising under New York Labor Law ("NYLL") §§ 160 *et seq.*, 190 *et seq.* (including, but not limited to § 191, § 193 and § 198), 215, 650, 12 N.Y.C.R.R. §§ 146-1.1. *et seq.* (including, but not limited to, § 146-2.1 *et seq.* and § 146-3.1 *et seq.*) and any applicable Wage Order, and any and all other claims under any similar statute, order, rule or regulation which were or which could have been asserted in this Litigation, specifically including, without limitation, claims set forth in Sections 2.11 and 4.1 herein.

1.29 **Released Persons and Releasees.**  "Released Persons" or "Releasees" shall mean Defendants, Defendants' present and former parents, subsidiaries, related or affiliated entities, and their respective past and/or present shareholders, officers, directors, employees, members, partners, managers, fiduciaries, trustees, agents, attorneys, insurers, successors, heirs and assigns, including but not limited to Mark-Sal, LLC d/b/a Frank Guido's Little Italy, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them. It is expressly understood that, to the extent Released Persons are not a party to the Agreement, all such Persons are intended third Party beneficiaries of this Agreement.

1.30 **Settlement Amount.** "Settlement Amount" shall mean the total settlement amount to be paid by the Defendants of Two Hundred Sixty-Five Thousand Dollars and Zero Cents ($265,000.00), as set forth below in Paragraph 3.3 inclusive of all costs, fees and disbursements, including: (1) Class Counsel's fees and costs as set forth in Section 3.4; (2) service award to the Named Plaintiff; and (3) Individual Settlement Amounts.

**1.31** **Settlement Checks.** "Settlement Checks" means checks issued to Participating Class Members by Defendants in accordance with this Agreement.

**2.** **INITIAL PROCEDURAL ISSUES**

**2.1** **Interim Stay of Proceedings.** Pending the Fairness Hearing to be conducted by the Court, or earlier if for any reason the settlement contemplated by this Agreement will not occur, the Parties agree to hold in abeyance all proceedings in the Litigation, except such proceedings as are necessary to implement and complete the settlement, or to comply with any order of the Court.

**2.2** **Preliminary Approval.** In connection with the Preliminary Approval Motion, the Parties will submit to the Court: (a) a proposed Preliminary Approval Order; (b) a proposed Claim Form; (c) a proposed Deadline Reminder Notice; and (d) a proposed Notice of Proposed Settlement of Class Action Lawsuit. The Preliminary Approval Motion will provide dates for notice to the Class, submission of Claim Forms, Opt-out Statements, objections and a Fairness Hearing.

**2.3** **Settlement Class Certification**. Solely for purposes of consummation and fulfillment of this Agreement, the Parties agree to the certification of the Class. Should, for whatever reason, the settlement not become final, the Parties' stipulation for Class Certification shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

**2.4** **Administration of the Settlement.**

(A)     Unless otherwise decided by the Parties and subject to the Court's approval, following the Court's granting and entry of the Preliminary Approval Order, Class Counsel shall be responsible for: (i) preparing, printing and disseminating the Notice to Class Members pursuant to Paragraph 2.5 of this Agreement; (ii) promptly furnishing to Defendants' Counsel copies of any Opt-out Statements, objections, or other written or electronic communications from any Class Member, which Class Counsel receives; (iii) keeping track of Opt-out Statements, including maintaining the original mailing envelope in which any Opt-out Statement was mailed; (iv) mailing of the Notice and attempting to ascertain current address and addressee information for each Notice returned as undeliverable; and (v) maintaining adequate records of the mailing and administration activities, including the dates of the mailing of Notice(s) and mailing and receipt of objections, Opt-out Statements, returned mail and other communications and attempted written or electronic communications to and/or from Class Members. In addition, no later than fifteen (15) days prior to the Fairness Hearing, Class Counsel shall certify and provide to Defendants' Counsel: (a) a complete list of Participating Class Members; (b) a list of all Class Members who filed a timely objection, and (c) a list of all Class Members who timely submitted a valid Opt-out Statement. Throughout the period of claims administration, Class Counsel shall provide reports to Defendants' Counsel upon request, regarding the status of the mailing of the Notices to Class

Members, the claims administration process, or any other aspect of the claims administration process.

(B)     Following the Effective Date of the Final Order, Class Counsel shall be responsible for applying the Parties' agreed-upon plan of allocation and providing Defendants' Counsel with a final individual allocation detailing the gross settlement amounts to be paid to the Named Plaintiff, including service award, to each Participating Class Member and to Class Counsel.

(C)     After receipt of the allocation prepared by Class Counsel, Defendants shall be responsible for preparing and distributing all Settlement Checks for the Participating Class Members to Class Counsel and for preparing and distributing W-2s, if any, and Form 1099s to all Participating Class Members and to Class Counsel. Defendants' Counsel shall also notify the Parties of any Settlement Checks that were uncashed following the Acceptance Period, as defined in Section 1.1. Defendants' Counsel shall provide Class Counsel with a list of outstanding Settlement Checks thirty (30) days prior to the end of the Acceptance Period. Class Counsel shall attempt to notify through reminder letters Participating Class Members who have not cashed their checks. Class Counsel shall be paid for all mailing and administration services from the Settlement Amount in the manner set forth in Section 3.2 below.

(D)     Defendants and Defendants' Counsel agree to provide Class Counsel with available information in its possession necessary to reasonably assist Class Counsel in locating Class Members.

2.5     **Notice to Class Members.**  The Notice will inform Class Members about this settlement, include each Class Members' dates of employment and position(s) as set forth in the Class List, if known, and advise them of the opportunity to object to or opt-out of the settlement, and/or to appear at the Fairness Hearing.

(A)     Within ten (10) days of the entry of the Preliminary Approval Order, Defendants' Counsel will provide (to the extent known by the Defendants) Class Counsel, in electronic form, a mailing list containing the following information for all Class Members: name, last known address, dates of employment, position(s) held, and part-time or full-time status, as that information exists on file with Defendants ("Class List"), to the extent not already provided. All information provided by Defendants or Defendants' Counsel regarding the Class Members will be treated as confidential information by Class Counsel and will not be used by the Parties for any purpose other than to effectuate the terms of this Agreement.

(B)     Within thirty (30) days of the entry of the Preliminary Approval Order, Class Counsel will mail to all Class Members, via First Class United States Mail, the Notice.

(C)     Class Counsel will take reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable,

including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. Class Counsel will notify Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s), as set forth in this Agreement.

(D)     As applicable, on the thirty-first day following the mailing of the Claim Form, Class Counsel will mail the Deadline Reminder Notice along with an appropriate Claim Form to Class Members from whom Class Counsel has not yet received a completed Claim Form within thirty (30) days after the mailing of the Claim Form.

(E)     In the event that individuals who claim to be Class Members but are not on the Class List come forward prior to the Opt-out Date, Class Counsel and Defendants' Counsel shall meet and confer in good faith in an attempt to determine if any such individual(s) are Class Members and resolve issues relating to any such individual(s). The determination and allocation amount agreed to by Class Counsel and Defendants' Counsel with respect to any such individual(s) will be presumed to be accurate.

## 2.6     Preliminary Approval Motion

(A)     Within ten (10) days of execution of this Agreement, Class Counsel will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") and allow Defendants an opportunity to review the terms of the Preliminary Approval Motion to ensure it is consistent with this Agreement.

(B)     Following Defendants' Counsel's review and approval of the Preliminary Approval Motion, Class Counsel shall apply to the Court to preliminarily approve the settlement and distribute the Notice and Claim Forms to Class Members.

(C)     The proposed Preliminary Approval Order will request the Court: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed Notice to Class Members; (3) request the setting of a date for Class Members to submit Opt-out Statements and/or submit objections to this Agreement, which date shall be thirty (30) days from the initial mailing of Notice to Class Members; and (4) request a date for a Fairness Hearing before the Court at the earliest practicable date.

(D)     Upon completion of all deadlines and procedures as set forth herein, Class Counsel will move the Court to obtain a Final Order that will: (1) incorporate the terms of this Agreement; (2) dismiss the Litigation with prejudice; (3) approve a service award to the Named Plaintiff, and (4) award Class Counsel's attorneys' fees and costs as set forth in Section 3.4.

(E)     The Parties will work together, diligently, and in good faith, to expeditiously obtain a Preliminary Approval Order, and Final Order dismissing the Litigation with prejudice. Any disputes which arise between the Parties related to the Parties'

efforts to obtain a Final Order, shall be submitted to this Court, whose decision shall be binding and not subject to appeal.

(F)     If the Court denies the Preliminary Approval Motion, then the Parties jointly agree to negotiate in good faith to resolve the issues raised by the Court in its denial and, if the Parties successfully reach a resolution of these issues, to seek Court approval of a renegotiated settlement. Should the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest the merits of the claims being asserted by Plaintiffs in this Litigation and this Agreement shall be null and void.

## 2.7    Opt-Outs.

(A)     Class Members who elect to opt-out of the settlement, as a condition to doing so, must timely submit, via First Class United States Mail, postage prepaid, an Opt-out Statement to Class Counsel that states he or she is opting out of the Settlement, and include his or her name, address, and telephone number and statement clearly evidencing his or her intention to opt-out such as: "I opt out of the Mariner's Harbor and Frank Guido's Little Italy settlement." To be effective, an Opt-out Statement must be post-marked by the Opt-out Date.

(B)     Class Counsel will send copies of all Opt-out Statements to Defendants' Counsel no later than three (3) days following receipt thereof.  Class Counsel will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as this Agreement is grated final approval by the Court.

(C)     Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Order of the Court in this case, and will have any Released State Law Claims released and dismissed.  Only those Class Members who do not timely submit an Opt-out Statement will be deemed eligible to participate in this Settlement.  The Parties, or anyone acting on their behalf, shall not encourage or assist any Class Member to submit an Opt-out Statement. Defendants will pay the amount allocated to each Participating Class Member who timely returns a Claim Form in accordance with the terms of this Agreement.

(D)     Any Class Member who timely submits an Opt-out Statement shall have sixty (60) days from the Effective Date to commence his or her own action in order to preserve the statute of limitation in this Lawsuit.

## 2.8    Objections to Settlement.

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first submit a written statement to Class Counsel via First Class United States Mail post-marked by the Opt-out Date indicating his/her desire to present such objections (the "Objections Statement").  The Objections Statement

must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address, and telephone numbers for the Class Member making the objection.  Class Counsel will stamp the date received on the original Objections Statement all send copies of each Objections Statement (if any), and any supporting documents, to Defendants' Counsel by email delivery no later than three (3) days after receipt of the Objections Statement.

(B)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her Objections Statement.  An Objector may withdraw his or her Objections Statement and objections at any time.

**2.9    No Solicitation of Opt-outs or Objections.**  The Parties agree to use their best efforts to carry out the terms of this settlement. Neither the Parties nor their counsel or agents will contact Class Members for the purpose of attempting to influence them to not participate in this settlement. However, if contacted by a Class Member, Class Counsel may provide accurate information or assistance regarding any aspect of the settlement requested by the Class Member.  At no time shall any of the Parties or their counsel or their agents solicit or otherwise encourage Class Members to opt-out of or object to this settlement or encourage Class Members or any other person to appeal any part of the Final Order.

**2.10   Final Approval and Dismissal**.

(A)     No later than fourteen (14) days prior to the Fairness Hearing, Class Counsel will submit to the Court a memorandum of law and any necessary affidavits, objections or opt-out information in support of a Motion for Final Approval and Dismissal ("Final Approval Motion").

(B)     Class Counsel will request that the Court schedule and conduct a Fairness Hearing, at which the Court will consider whether the settlement is fair, reasonable, and adequate. Plaintiffs shall request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on Class Members who have not filed a valid, timely Opt-out Statement; (2) order Defendants to distribute the Settlement Checks to the Participating Class Members; (3) determine what legal fees and costs should be awarded to Class Counsel in accordance with this Agreement; (4) order that a service award in an amount not to exceed a total of Five Thousand Dollars ($5,000.00) be distributed to the Named Plaintiff; (5) order the dismissal with prejudice of all Released State Law Claims by Class Members who did not timely file an Opt-out Statement; (6) order the dismissal with prejudice of all Released Federal Law Claims by Participating Class Members who cash/deposit/negotiate their Settlement Checks; (7) incorporate the release set forth in the Settlement Agreement and make the release effective as of the date of the Final Order; (8) order entry of dismissal, with prejudice in accordance with this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of,

11

or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(C)     If the Court fails to enter a Final Order in accordance with this Agreement, or if the Final Order is set aside by appeal, the Parties will resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying the Final Approval Motion; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)     If the Final Order is not entered or is set aside, Class Counsel will provide notice to Class Members that the Agreement did not receive final approval by the Court and that, as a result, the Agreement is null and void and no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by Class Counsel via First Class United States Mail, postage prepaid, to the addresses used by Class Counsel in mailing the Notices.

**2.11    Releases and Consents to Join.**

(A)     A Class Member who returns a Claim Form as set forth in Section 3.3(A)(2) during the Claim Period and who does not timely submit an Opt-out Statement will be issued a Settlement Check by Defendants in accordance with the Final Order.

(B)     After the Defendants have set aside the total funds of the Settlement Amount into a bank account maintained by Defendants, Defendants will mail via overnight mail, either FedEx or UPS, the Settlement Checks to Class Counsel to be distributed to Participating Class Members for the Distribution.

(C)     Defendants will re-issue a Settlement Check to a Class Member who provides a sworn statement to Class Counsel and Defendants that he or she never received or lost the original Settlement Check, provided an effective stop-payment has been placed on the previously-issued Settlement Check to ensure that the amount payable to such Class Member is actually received by such Class Member.

(D)     The Settlement Check shall contain the following language: By endorsing, depositing, cashing, receiving, or otherwise negotiating this check, I hereby consent to release Defendants from all wage and hour claims under the Fair Labor Standards Act and New York Labor Law for the "maximum period permitted by applicable law, rule or regulation" that were or could have been advanced in any claim or lawsuit, including without limitation, *Cruz v. Sal-Mark Restaurant Corp., et al.,* Case No. 17-cv-00815, United States District Court for the Northern District of New York.

**2.12** **Mailing of Checks.** The Settlement Checks, and Class Counsel's check to pay for all approved attorneys' fees and costs, will be mailed by Defendants in accordance with the terms of the settlement described in Section 3 below.

**2.13** **Uncashed Checks.** If any of the Settlement Checks are returned or remain uncashed within one hundred and twenty days (120) calendar days after each distribution to the Participating Class Members (the "Acceptance Date"), Defendants will notify Class Counsel of any unused, returned or uncashed Settlement Checks. There will be an additional ninety (90) day period after the close of the Acceptance Period for Participating Class Members to request in writing, a replacement check from Defendants (such request must be postmarked within 90 days of the expiration of the Acceptance Period). After the close of the Acceptance Period and additional ninety (90) day period, if applicable, Defendants shall discontinue payment of same and the sum shall remain with Defendants.

**2.14** **Disputes.** If a Class Member disputes his/her period of time worked or other information relating to his/her employment with Defendants utilized for the allocation of an Individual Settlement Amount, the Class Member may produce evidence to Class Counsel and Defendants indicating the dates and/or hours he/she contends to have worked during the applicable Class Period. Defendants' records will be presumed determinative, but the Parties will evaluate the evidence submitted by the Class Member and Defendants, and make a joint determination, subject to the right of Defendants or the Class Member to appeal the decision to the Court.

**2.15** **Waiver of Appeals.** If the Court issues the Final Order, the Named Plaintiff and each Class Member who does not timely submit an Opt-out Statement shall be deemed to have waived all rights to appeal the Final Order and all prior Orders in the Litigation except to the extent an Objector has the right to appeal with respect to his or her objection.

**3.** **SETTLEMENT TERMS**

**3.1** **Difficulty of Determining Claims.** The Parties recognize and agree that the precise amounts of compensation claimed in the Litigation are extremely difficult to determine with any certainty for any given year, if at all, and are subject to a myriad of different calculations and formulas. The Parties agree that the formula for allocating the Individual Settlement Amount payable to Participating Class Members as provided herein is reasonable and that the payments provided herein are designed to provide a fair settlement to such persons, in light of the uncertainties regarding the compensation alleged to be owed to the Class Members and the calculation of such amounts.

**3.2** **Settlement Payment**.

(A)   Within seven (7) days following the Effective Date, Defendants agree to deposit or set aside the necessary funds into an account, which shall fully resolve and satisfy all claims asserted in this Litigation and all Released Claims, including but not limited to: (1) all Court-approved attorneys' fees and costs payable to Class Counsel; (2) the Court-approved service award to the Named Plaintiff, and (3) all court approved Individual Settlement Amounts to be paid to Participating Class

Members. Defendant will not be required to pay more than the Settlement Amount in connection with the settlement of the Litigation, or this Agreement.

(B)     Within fifteen (15) days of Defendants funding the account with the Settlement Amount as set forth in Section 3.2(A), Defendants will distribute the Net Settlement Amount by making payments consistent with Section 3.3.

**3.3     Settlement Fund Computation and Plan of Allocations.**

(A)     Individual Settlement Amounts to Participating Class Members.

1.   A Class Member who does not timely submit an Opt-out Statement, will be deemed eligible for a payment hereunder and will release all Released State Law Claims in accordance with Paragraph 2.11 and Section 4.1.

2.   Each Participating Class Member is eligible to receive a distribution from the Net Settlement Fund.

3.   The Parties shall work together to create a fair Plan of Allocation from the Net Settlement Fund for each Participating Class Member to constitute the Distribution. The formula for the Plan of Allocation shall be based upon each Class Member's dates of employment, position(s) held, and part-time or full-time employment status, as reflected in Defendants' records. Using the Plan of Allocation, Class Counsel will calculate each Class Members' Individual Allocation.

4.   Each Participating Class Member's Individual Allocation shall be divided by the total amount of Individual Allocations paid during the Distribution to yield each Participating Class Member's "Proportionate Share of the Net Settlement Fund." This amount shall represent the percentage each Participating Class Members' Individual Allocation of the sum total of all Individual Allocations paid in the Distribution. In the event that fewer than 15 persons opt-in as Participating Class Members, the Parties shall review each individual claim based upon the criteria and Plan listed in paragraph 3.3(A)(3) above, after which any remaining funds in the Net Settlement Fund will be returned to Defendants.

5.   The Individual Settlement Amount shall be payable to each Participating Class Member net of all adjustments and deductions for all applicable taxes and withholdings as required by federal, state and local law.

6.   Defendants shall mail to Class Counsel, via overnight traceable mail, either FedEx or UPS, each Participating Class Member's Settlement Check to be distributed to Participating Class Members by Class Counsel at the address set forth on each Participating Class Member's Notice, or at such updated address that has been obtained, pursuant to Section 3.3 of this Agreement. Class Counsel will use reasonable efforts to make an additional mailing to Participating Class Members whose checks are returned undelivered.

Participating Class Members must cash or otherwise negotiate their Settlement Checks within the Acceptance Period. Participating Class Members shall be notified of the Acceptance Period on the Settlement Checks.

7. In the event that Defendants fail to make payment of the full Settlement Amount in the timeframe set forth in Section 3.2(A), Plaintiffs' Counsel shall notify Defendants' Counsel via e-mail of their default in payment. Defendants shall have fifteen (15) days from the date of said notice to cure any such default (the "Cure Period"). Failure by Defendants to make payment of the full Settlement Amount within the Cure Period shall constitute a material breach of this Agreement. Plaintiffs shall be entitled to reimbursement for any costs and attorneys' fees expended in furtherance of the enforcement of this Agreement, including collections of the full Settlement Amount.

8. The Parties shall secure the dismissal of the Lawsuit, with prejudice, by Order of the Court.

**3.4 Settlement Amounts Payable as Attorneys' Fees and Costs**

(A) At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Fund after reimbursement for litigation costs incurred of approximately $2,086.04. Defendants will not oppose Class Counsel's application of up to one-third of the Settlement Fund in attorneys' fees plus approximately $2,086.04 in costs and expenses incurred, provided such award of attorney's fees and costs shall be included as part of the Settlement Fund, and shall not increase the Settlement Fund in any way.

(B) The substance of Class Counsel's motion for attorneys' fees and costs and Settlement Costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs and Settlement Costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.5 Service Award to Named Plaintiff**

(A) In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff will apply to the Court to receive a total of no more than five thousand dollars ($5,000) to be distributed to the Named Plaintiff as a service award included as part of the Settlement Fund.

(B) The application for a service award to the Named Plaintiff is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling

on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval and Judgment.

**3.6**     **Tax Characterization.**

(A)     Fifty percent (50%) of each Participating Class Members' Individual Settlement Amount shall be deemed W-2 wage income and reported as such by the Defendants to the taxing authorities and fifty percent (50%) shall be deemed 1099 interest and liquidated damage income and reported as such by Defendants to the taxing authorities.

(B)     The fees and expenses provided to Class Counsel shall be reported on an IRS 1099 Form issued by Defendants to the appropriate taxing authorities, with a copy to Class Counsel.

**3.7**     **No Tax Advice.**   Neither Class Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such. The tax issues for each Class Member are unique, and each Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from the Settlement Checks.

**3.8**     **Hold Harmless.**   The Class Members agree to hold Defendants and their affiliates and agents harmless, and indemnify Defendants from any payments the Defendants may be required to make to any taxing authority resulting from the issuance of an IRS tax form 1099 or form W-2 and any Class Member's failure to pay any taxes that any Class Member owes related to said income.

**3.9**     **Defendants' Legal Fees and Costs.**    All of Defendants' own legal fees, costs and expenses incurred in the Litigation shall be borne by Defendants.

**4.**     **RELEASE**

**4.1**     **Release of Claims.**

(A)     By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement forever and fully releases all Released Parties (as defined in Section 1.29), their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, all persons acting by, through, under or in concern with them, from all state law claims from the date of the beginning of the Relevant Statutory Period through the date of this Agreement under the New York Labor Laws and any other state or local law or common law relating to failure to pay wages, overtime wages, minimum wages, spread of hours payments, wage notice violations, wage statement violations, liquidated damages, interest, penalties and attorneys' fees and costs related to such claims or claims that were or could have been brought in this Litigation.

16

(B)     In addition to the release of the Released Claims set forth in paragraph A above, as described in Section 2.11(D), each individual Participating Class Member who cashes, deposits, receives or otherwise negotiates his/her Settlement Check thereby automatically releases Defendant from all Released Federal Law Claims. By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each Class Member who fails to submit a timely, valid Opt-out Statement forever and fully releases Released Parties from all Released State Law Claims through the date of Judgment and Final Order.

(C)     Except as provided in this Agreement, upon payment of Class Counsel's attorney's fees and costs approved by the Court, Class Counsel, the Named Plaintiff and the Class Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

(D)     Class Members who file timely, valid Opt-out Statements shall continue to retain all rights and claims against the Defendants, subject to Section 2.7 herein. No person shall have any claim against the Parties or Counsel based on mailings, distributions and payments made, or any other action taken, in accordance with or pursuant to this Agreement or any order of the Court.  For example, no person shall have any claim against either Party or Counsel resulting from use of an incorrect mailing address for a Class Member, or the payment of an incorrect amount to a Participating Class Member. The Parties shall take reasonable steps to remedy any correctable errors.

## 5.     INTERPRETATION AND ENFORCEMENT

**5.1     Denial of Wrongdoing.** Defendants deny all of the claims, contentions, and each and every allegation made by the Plaintiffs. In addition, nothing herein shall be deemed to waive any of Defendants' objections and defenses to class certification or any other issue relating to or arising from the allegations set forth in the Complaint.

**5.2     Inadmissibility of This Agreement.** Whether or not the settlement is finally approved, and except and to the extent that this Agreement becomes a release of claims on the Final Order, as provided for herein, neither the settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be:

(A)     Construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage; or

(B)     Disclosed, referred to, or offered or received in evidence against any of the Parties, in any further proceeding in the Litigation, or any other civil, criminal or administrative action or proceeding except for purposes of settling the Litigation pursuant to the terms of this Agreement, and to enforce this Agreement in the event of a default.

**5.3     No Assignment/ No Liens.**  Class Counsel and the Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action. The Named Plaintiff and Class Counsel represent that there are no outstanding liens or claims against the Litigation that they are aware of.

**5.4     Publicity.**  The Parties and their Counsel agree that they will not seek to publicize this Settlement, apart from any notices required by this Agreement or the Court and that their only comment, in the event they receive any inquiry concerning the resolution of the various issues reflected in this Settlement Agreement from a person who is not a Party or a Class Member will be to state: "We were able to reach an amicable resolution of the dispute in this case."  For purposes of clarity, nothing in this paragraph restrains any Party from making any communications to its legal or financial advisors concerning this settlement or restrains any Party from making any communication required by law.

**5.5     Cooperation between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement as required herein.

**5.5     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, supersedes any prior agreements, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.6     Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.7     Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.  The Parties represent that, in executing the Settlement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof.

18

**5.8**     **Captions.**  The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.9**     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**5.10**    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.11**    **Continuing Jurisdiction.**  The Parties agree the judges presiding over the action in the Northern District of New York, specifically, Chief Judge Glenn T. Suddaby and Magistrate Judge Daniel J. Stewart, shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.12**    **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.13**    **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its full execution and final approval by the Court.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.14**    **Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.15**    **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

## WE AGREE TO THESE TERMS,

**For Plaintiffs:**

_____          9/11/18
VICENTE CRUZ                                           _____
                                                       Date

**For Defendants:**

## SAL-MARK RESTAURANT CORP.

_____          _____
                                                       Date

_____
Print Name

_____
Title

## MATTEO-BELLA, LLC

_____          _____
                                                       Date

_____
Print Name

_____
Title

WE AGREE TO THESE TERMS,

For Plaintiffs:

_____
VICENTE CRUZ                              _____
                                           Date

For Defendants:

SAL-MARK RESTAURANT CORP.

___Frank Guido___          ___9/14/18___
                              Date
Frank Guido
Print Name

___President___
Title

MATTEO-BELLA, LLC / mark-SAL LLC

_____          ___9/14/18___
                              Date
Frank Guido
Print Name

___Pres/ member___
Title

_____          ___9/14/18___
FRANK GUIDO                   Date

_____          ___9/14/18___
SALVATORE GUIDO III           Date

_____          ___9/14/18___
MARK GUIDO                    Date

20