# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

VICENTE CRUZ, *Individually and on Behalf of All Others Similarly Situated*,

                      Plaintiff,

      -against-                      1:17-CV-0815
                                              (DJS)

SAL-MARK RESTAURANT CORP., d/b/a/ MARINER'S HARBOR RESTAURANT, MATTEO-BELLA, LLC d/b/a/ FRANK GUIDO'S LITTLE ITALY, FRANK GUIDO, SALVATORE GUIDO III, and MARK GUIDO, *Jointly and Severally*,

                      Defendants.

**APPEARANCES:**                       **OF COUNSEL:**

PELTON GRAHAM LLC            TAYLOR B. GRAHAM, ESQ.
Class Counsel                      BRENT E. PELTON, ESQ.
111 Broadway, Suite 1503
New York, New York 10006

LAW OFFICE OF BENJAMIN W. HILL, PLLC    BENJAMIN W. HILL, ESQ.
Counsel for Defendants
50 State Street
Second Floor
Albany, New York 12207

**DANIEL J. STEWART**
**United States Magistrate Judge**

# ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPROVAL OF CLASS COUNSEL'S FEES AND COSTS AND APPROVAL OF SERVICE AWARD

1. The above-captioned matter came before the Court on Plaintiff's Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs. Dkt. Nos. 55-57. A fairness hearing was held by the Court on January 24, 2018, wherein counsel for the parties presented their arguments in support of approval of the final settlement. No objections were raised by any class member. For the reasons that follow, the Court grants Plaintiff's Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

2. The parties' proposed settlement resolves all claims in the currently pending action entitled *Vicente Cruz v. Sal-Mark Restaurant Corp., et al.*, 17 Civ. 815 (DJS) (N.D.N.Y.).

3. The Named Plaintiff in this action alleges, among other wage and hour issues, that Sal-Mark Restaurant Corp. d/b/a Mariner's Harbor Restaurant ("Mariner's Harbor"), Matteo-Bella, LLC d/b/a Frank Guido's Little Italy ("Little Italy"), Frank Guido, Salvatore Guido III, and Mark Guido (collectively, the "Defendants") failed to pay non-management employees minimum wage and overtime premiums in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff further alleges that Defendants failed to pay spread-of-hours premiums for days in which employees worked over ten (10) hours in a day and failed to provide wage notices and wage statements, in violation of the NYLL.

4. On July 24, 2017, Vicente Cruz commenced this action as a putative class action

under Fed. R. Civ. P. 23 and as a collective action under the FLSA.[1]

5. Defendants filed their Answer on August 23, 2017, disputing the material allegations and denying any liability in the proposed class and collective actions. *See* Dkt. No. 10.

6. Following an initial pretrial conference held October 23, 2017, this Court referred this Action on October 25, 2017 to the Mandatory Mediation Program for the Northern District of New York, with a February 28, 2018 deadline to complete mediation. Dkt. No. 15.

7. On December 15, 2017, the parties filed a consented-to Motion for Conditional Certification of an FLSA Collective Action with proposed notice documents. Dkt. No. 22.

8. On December 18, 2017, the Court approved the parties' stipulated motion and notice materials. Dkt. No. 23. The notice materials were mailed to a collective of "all current and former non-exempt, full-time employees (working 30 or more hours per week) who worked at Mariner's Harbor Restaurant and/or Frank Guido's Little Italy at any time between July 24, 2014 through the present." Dkt. No. 22.

9. Eleven (11) individuals exercised their right to join the action by filing their consent to become party plaintiff forms with the Court. *See* Dkt. Nos. 25-27, 30, & 32-38.

10. On July 24, 2018, the parties held a mediation session before Michael J. Murphy, Esq. of Capital District ADR, where they were able to reach a settlement in principle. Dkt.

---

[1] The Named Plaintiff, opt-in Plaintiffs and the Settlement Class are hereinafter referred to collectively as the "Plaintiffs."

No. 43.

## II. OVERVIEW OF INVESTIGATION AND DISCOVERY

11. Plaintiff's counsel asserts that his firm has conducted substantial investigation and prosecution of the claims in the lawsuit, including, but not limited to, negotiating a § 216(b) FLSA collective with Defendants and mailing opt-in notices to collective action members, interviewing the Named Plaintiff and other Class Members, reviewing documents produced by the Named Plaintiff as well as documents produced by Defendants, analyzing such data to create a class-wide damages analysis, conducting legal research into the facts and merits of this action, and preparing for and engaging in significant settlement negotiations. Dkt. No. 57, Declaration of Brent E. Pelton, Esq. ("Pelton Decl.") at ¶¶ 21-24.

## III. SETTLEMENT NEGOTIATIONS

12. Since the Defendants filed their Answer in the Litigation, the parties have engaged in informal and formal settlement negotiations. The parties had numerous discussions by telephone and by e-mail regarding the damages and factual and legal issues in the case throughout the Action. Pelton Decl. at ¶ 22.

13. This Action was referred to Mandatory Mediation on October 25, 2017. After extensions of the parties' initial deadline to complete the mediation, mediation was held July 24, 2018 before Michael J. Murphy, Esq. of Capital District ADR. At that time, the parties reached a settlement in principle. Dkt. No. 43 ("Settlement Agreement").

14. Ultimately, the parties finalized their settlement, including all outstanding issues, which were memorialized in a formal Settlement Agreement and Release.

15. The negotiations were conducted at an arm's-length basis.

16. The parties agreed to settle this case for a total Settlement Amount of $265,000.00. After deduction of attorneys' fees and costs and a service award for the Named Plaintiff, the remaining funds will be allocated among Participating Class Members. Ex. B to Pelton Decl. at ¶ 1.20.

17. All current and former restaurant employees who worked at Mariner's Harbor and/or Frank Guido's Little Italy at any point from July 24, 2011 to the date that the Court issued Preliminary Approval of the settlement, October 10, 2018 who have not opted out of the Action (the "Class" or "Class Members") are eligible to participate in the Settlement. *Id.* at ¶ 1.5.

18. All Class Members who do not opt-out of the settlement and who submit a valid Claim Form during the Claim Period will be eligible to participate in and receive a payment from the settlement ("Participating Class Members"). *Id.* at ¶ 1.25. Settlement checks will be mailed by Defendants within fifteen (15) days after Defendants' funding of the settlement account with the full Settlement Amount. *Id.* at ¶ 3.2(B).

19. The Net Settlement Fund will be allocated among Participating Class Members based upon each individual Class Member's dates of employment, position(s) held, and part-time or full-time status, as reflected in Defendants' records. *Id.* at ¶ 3.3(A)(3).

20. The amounts paid to Class Members will be allocated fifty percent (50%) as W-2 wage payments and fifty percent (50%) as non-wage liquidated damages and interest, such that all W-2 payments shall be subject to payroll and withholdings taxes. *Id.* at ¶ 3.6(A).

21. The Settlement Fund will be funded by Defendants within seven (7) days after the Final Effective Date of the settlement. *Id.* at ¶ 3.2(A)).

## IV. PRELIMINARY APPROVAL OF SETTLEMENT AND DISSEMINATION OF THE NOTICE

22. On October 10, 2018, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members, approving the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice"). *See* Dkt. No. 50.

23. Pursuant to the Court's Order, Defendants provided Class Counsel with a list of Class Members, which included the Class Members' names and last known mailing address. Pelton Decl. at ¶ 4; *see also* Declaration of Adriana Sandoval ("Sandoval Decl."), annexed to Pelton Decl. as Ex. A, ¶ 5. The final list agreed upon by the parties contained three hundred and twenty-three (323) Class Member names and addresses.

24. Class Counsel mailed the Notice package, containing the Notice and Claim Form, to the three hundred and twenty-three (323) addresses provided for the Class Members via First Class Mail. Pelton Decl. at ¶ 5; Sandoval Decl. at ¶ 6.

25. If a Class Member's Notice was returned by the USPS as undeliverable without a forwarding address, Class Counsel performed a public records search on the Lexis database utilizing the individual's name and last known address. Pelton Decl. at ¶ 6; Sandoval Decl. at ¶ 7. For any updated addresses received, Class Counsel updated the Class Member list and, where an additional address was located, re-mailed the Notice packages. *Id.*

26. The Notices advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information regarding the case and settlement, as well as how to opt-out of or object to the settlement. Pelton Decl. at ¶ 10; Sandoval Decl. Ex. A (Mailed Notice).

27. As of January 10, 2019, Class Counsel received two (2) requests for exclusions (opt-outs) and zero (0) objections to the settlement. Pelton Decl. at ¶ 13; Sandoval Decl. at ¶¶ 10-11.

## V. CONTRIBUTIONS OF THE NAMED PLAINTIFF

28. The Named Plaintiff, Vicente Cruz, is said to have been integral in initiating this class action and made significant contributions to the prosecution of the litigation. *See* Pelton Decl. at ¶¶ 16-20. The Named Plaintiff served the class by providing detailed factual information regarding his job duties and hours worked and the job duties and hours worked of the Class Members, assisting with the preparation of the complaint, producing documents in support of his claims, relaying information to Class Members during the pendency of this case, participating in the mediation and subsequent settlement negotiations, and assuming the burden associated with assisting with litigation. *Id.*

29. The Named Plaintiff also assumed the risks of litigation as well as other professional risks and burdens. *Id.*

30. Without the effort of the Named Plaintiff, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved. Therefore, the Named Plaintiff is entitled to a service award of the type commonly awarded in complex

wage and hour litigation.

## VI. FINAL APPROVAL OF CLASS SETTLEMENT

31. The Court held a fairness hearing on January 24, 2019 in Syracuse, New York. No objections to the settlement were raised during the course of the hearing.

32. Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. as Exhibit B; (ii) certifies under Fed. R. Civ. P. 23 the settlement class defined as "All current and former restaurant employees who worked at Mariner's Harbor and/or Frank Guido's Little Italy at any point from July 24, 2011 through October 10, 2018," which class the Court previously provisionally certified; (iii) approves the service payment to the Named Plaintiff in the amount of $5,000; (iv) approves an award of attorneys' fees in the amount of $87,637.99 (one-third of the Settlement Amount after subtracting the actual litigation costs); and (v) approves payment to Class Counsel for reimbursement of their actual litigation costs in the amount of $2,086.04.

34. Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *Elliot v. Leatherstocking Corp.*, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D.174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong

judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotation marks and citation omitted). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id*. (internal quotation marks omitted).

35. If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, 2014 WL 4352060, at *4 (N.D.N.Y. Aug. 20, 2014); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (quotation marks and citation omitted). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.* (citations omitted).

A. PROCEDURAL FAIRNESS

36. It is clear from the history of the case that the parties reached this settlement only after engaging in thorough investigation and discovery which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including several discussions via telephone, email and in-person. The settlement was reached as a result of arm's length negotiations between experienced, capable counsel after meaningful exchange

of information and discovery, and with the critical assistance of Mediator Michael Murphy.

## B. SUBSTANTIVE FAIRNESS

37. In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 463 (internal citations omitted). Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

38. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

39. The response to the settlement has been positive. There have been two (2) requests for exclusion and zero (0) objections to the Settlement. Pelton Decl. at ¶ 13; Sandoval Decl. ¶¶ at 10-11. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d

337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst Inc.*, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 7 of 2,025 class member submitted timely objections and 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

40. The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y.2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (internal quotation marks omitted). The parties' discovery here meets this standard. Class Counsel has interviewed several current and former employees of Defendants including the Named Plaintiff, Opt-in Plaintiffs and Class Members to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed documents provided by the Named Plaintiff and Defendants; negotiated a § 216(b) FLSA collective with Defendants and mailed opt-in notices to members of the collective action; provided 26(a) disclosures; fielded questions from Class Members; performed extensive legal research; and compiled and negotiated a damages analysis and discussed the same on the telephone and in person, including at a mediation. Pelton Decl. at ¶ 21.

41. The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiff and the Class Members would have to prove that they were not receiving the legally-required minimum wage, overtime and spread-of-hours pay, which would require proving that Defendants' time records are inaccurate. Furthermore, Plaintiffs would have to prove that their unpaid minimum wage, unpaid overtime and unpaid spread-of-hours and failure to provide wage notice and wage statement claims are appropriate for class certification under Rule 23, which Defendants would strongly oppose. "Litigation inherently involves risks." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (quotation marks and citation omitted). The settlement alleviates this uncertainty. *Id.* at *5.

42. The risk of maintaining the class status through trial is also present. Although Plaintiff has not yet moved for Rule 23 class certification, any such motions would be highly contested. Specifically, Defendants would argue that there are individualized questions as to the job duties, hours worked, and payment structure for the Named Plaintiff and the Class Members that make certification and ultimately trial on a class-wide basis impractical. Settlement eliminates the risk, expense, and delay inherent in this process. *Elliot v. Leatherstocking Corp.*, 2012 WL 6024572, at *4 (discussing the burdens and risks of maintaining class status through trial).

43. Defendants' ability to pay was a substantial factor in the parties' decision to settle this matter. In addition, even if Defendants can withstand a greater judgment than the amount of the settlement, a "defendant's ability to withstand a greater judgment, standing

alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder granting final approval.

44. The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). Therefore, the eighth and ninth *Grinnell* factors favor final approval.

VII. CERTIFICATION OF THE FINAL SETTLEMENT CLASS

45. In the Court's Order Granting Preliminary Approval of the Class Settlement, the Court concluded that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, ascertainability and maintainability under Rule 23(a) and (b)(3), and preliminarily granted conditional certification of the Settlement Class, consisting of "All current and former restaurant employees who worked at Mariner's Harbor and/or

Frank Guido's Little Italy at any point from July 24, 2011 through the Date of the Court's Order granting Preliminary Approval of the Settlement," which was October 10, 2018. Dkt. No. 50 § III.

46. As of the date of this Order, no facts have been presented to me to indicate that the preliminary determination was incorrect or erroneous. Thus, for the reasons set forth in the Preliminary Approval Order, the Court hereby grants final certification of the Settlement Class.

## VIII. APPROVAL OF THE FLSA SETTLEMENT

47. The Court hereby approves the FLSA settlement.

48. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

49. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g., Willix v. Healthfirst Inc.*, 2011 WL 754862, at *5. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5. "If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement." *Id.*

50. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

## IX. DISSEMINATION OF NOTICE

51. Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class Member at his or her last known address. Pelton Decl. at ¶ 5; Sandoval Decl. at ¶ 6. The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted January 24, 2019.

52. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## X. AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO NAMED PLAINTIFF

53. As represented by their time sheets, Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Named Plaintiff's and the Class Members' claims.

54. Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

55. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class' interests.

56. The Court hereby awards Class Counsel $87,637.99 (one-third of the Settlement

Amount after subtracting the actual litigation costs) for attorneys' fees.

57. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method. *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

58. Class Counsel's request for one-third (33.33%) of the settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst Inc.*, 2011 WL 754862, at *6 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action). *See, e.g., Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*, 2016 WL 3406111, at *7 (N.D.N.Y. June 17, 2016) (approving attorneys' fee award of $90,000 plus costs, which request represented 31.8% of the gross settlement fund).

59. Class Counsel risked time and effort and advanced costs and expenses. A percentage-of-recovery fee award of one-third (33.33%) of the Settlement Amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (33.33%) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

60. Even evaluating the attorneys' fees requested by Class Counsel under the

"lodestar method," the request for $87,637.99 is also within the range of reasonableness under the *Goldberger* factors. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

61. The attorney and paralegal hourly billing rates asserted in this case, ranging from $125 per hour for paralegals to $450 per hour for senior partners, are somewhat higher than what is normally accepted withing this district. "Recent cases in the Northern District have upheld hourly rates between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals." *Deferio v. City of Syracuse*, 2018 WL 3069200, at *3 (N.D.N.Y. June 21, 2018) (collecting cases). At those rates, the hourly total, not including expenses and the time spent in traveling to Syracuse for the fairness hearing, would be approximately $60,000, rather than counsels' asserted $70,000.

62. At those rates, the requested attorneys' fee award would represent a multiplier of approximately 1.4; although higher than the asserted 1.25 multiplier that would apply to counsels' stated lodestar, a 1.4 multiplier is reasonable in light of the *Goldberger* factors (discussed at length in Plaintiffs' Memo. of Law in Support of their Motion for Final Approval), and is in line with other cases in the Second Circuit. *See, e.g., Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014).

63. The attorneys' fees awarded and expenses reimbursed shall be paid from the settlement amount.

64. The Court also awards Class Counsel reimbursement of their reasonable litigation expenses in the amount of $2,086.04, which is to be paid from the Settlement Amount.

65. The Court finds reasonable a service award to the Named Plaintiff in the amount of $5,000. This amount shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.

## XI. CONCLUSION AND DISMISSAL

66. The Court approves the terms and conditions of the Settlement Agreement.

67. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

68. The entire case is dismissed on the merits and with prejudice, with no party being considered or deemed to be a prevailing party, and each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all Class Members.

69. The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

70. Neither this Order, the Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party

has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

71. All Class Members are enjoined pursuant to 28 U.S.C. § 1651(a) from initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in federal or state court or administrative agency based on putative violations of the FLSA or any state law (including statutory, regulatory, and common law) pertaining to wage and hour claims that have been asserted or could have been asserted in this action or that have been released under the Settlement Agreement.

72. Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the dismissal with prejudice of this action to enforce the Settlement Agreement until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

**IT IS SO ORDERED**.

Dated: January 28, 2018
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge